## NORTON CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2534.

Circuit Court of Appeals, First Circuit.
June 10, 1931.

James W. Mudge, of Boston, Mass. (Ropes, Gray, Boyden & Perkins, of Boston, Mass., on the brief), for petitioner.

J. Louis Monarch, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Andrew D. Sharpe and John MacC. Hudson, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, and De Witt M. Evans, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for Commissioner of Internal Revenue.

Robert N. Miller and Ward Loveless, both of Washington, D. C., amici curiæ.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

ANDERSON, Circuit Judge.

This petition for a review of an adverse decision of the Board of Tax Appeals (19 B. T. A. 1234) involves petitioner's income and profits tax for 1919 of $82,779.78. The controlling issue of law is whether the Commissioner was precluded from reducing the taxpayer's amortization allowance, made on April 8, 1924, under section 234 (a) (8) of the Revenue Act of 1918 (40 Stat. 1057, 1077), by making another allowance in 1927.

The facts, conclusive on us, as in effect found by the Board of Tax Appeals, are as follows:

(1) The petitioner, which is a Massachusetts corporation with principal office at Worcester, claimed a deduction for amortization in the amount of $1,296,133.68 under the provisions of section 234 (a) (8) of the Revenue Act of 1918 in connection with amended tax returns for the years 1918 and 1919 filed with the Commissioner on or about December 15, 1921, and supported its claims by submission to the Bureau of a detailed and comprehensive report of an appraisal company and subsequently further supported its claim by submission to the Bureau of a brief dated May 29, 1922, and a letter addressed to the Bureau engineer assigned to the field investigation of the petitioner's amortization claim, to which letter there were attached sundry schedules containing supplemental infor-

mation requested by the engineer together with additional data.

(2) Under date of January 5, 1923, the Bureau engineer assigned to the field investigation of petitioner's amortization claim submitted his report upon the claim recommending an amortization allowance of $1,002,977.30 in lieu of the amount claimed by the petitioner ($1,296,133.68) and of such allowance of $1,002,977.30 allocating $981,647.89 to the year 1918 and $21,615.74 to the year 1919. The said report was signed by H. F. Coombs, as "Engineer," by W. T. Jennings as "Reviewing Engineer," and by S. T. De La Mater as "Chief of Section."

(3) Under date of June 15, 1923, the petitioner submitted to the Bureau a brief: "Re Revision of income, war and excess-profits tax returns for the calendar years 1918 and 1922, inclusive." In this brief petitioner referred to the engineer's report of January 5, 1923 (described in the preceding paragraph), as a report in which—

" * * * The Bureau of Internal Revenue, Amortization Section, stated the final results of an examination of the company's claim for amortization by an engineer from the Amortization Section, * * * "

—and thereupon readjusted all of its computations affected by the amortization allowance to accord with the amortization allowance contained in said report of the Bureau engineer.

(4) Under date of February 29, 1924, the Internal Revenue agent assigned to conduct a field examination of petitioner made his report to the Commissioner, and in such report recommended the same allowance for amortization as that previously allowed by the Amortization Section of the Bureau.

(5) Under date of April 8, 1924, the Bureau addressed to the petitioner a letter as follows:

"Treasury Department,

"Office of Commissioner of Internal Revenue,

"Washington, April 8, 1924.

"IT:CR: E W W C–App.

"Norton Company, Worcester, Massachusetts.

"Sirs: Reference is made to your request dated June 15, 1923, that your profits taxes for the years 1918 and 1919 be computed under the provisions of Sections 327 and 328 of the Revenue Act of 1918.

"Before consideration can be given your application there must be a final determination of your net income; therefore it will be necessary for you to advise this office within ten days from the date of this letter of your acquiescence in the determination of your net income as shown in schedules attached or exceptions, if any, which you make thereto.

"Respectfully,

"J. G. Bright, Deputy Commissioner.

"Enclosure: Statement Schedules 1 to 17, incl."

To this letter were attached schedules embodying the detailed determination of net income for the years 1918 and 1919, and in these schedules amortization was allowed in the amounts recommended by the engineers of the Amortization Section.

(6) Under date of April 16, 1924, the petitioner submitted to the Bureau its statement of exceptions to determination of net income and invested capital for the years 1918 and 1919, as shown in the Bureau letter of April 8, 1924, referred to in item 5 preceding; this statement, however, including no exception with respect to the amortization deduction allowed by the Bureau in the said letter of April 8, 1924.

(7) Under date of May 23, 1924, the petitioner submitted to the Bureau a letter in reply to the Bureau's letter of April 8, 1924; such reply being as follows:

"May 23, 1924.

"Commissioner of Internal Revenue, Washington, D. C.

"Sir: I, Aldus C. Higgins, Treasurer of the Norton Company, a corporation having its principal office at New Bond Street, Worcester, Massachusetts, do hereby agree to and acquiesce in the determination of the net income of the Norton Company for the calendar years 1918 and 1919, as set forth in Treasury Department letter of April 8, 1924, symbols IT:CR:E WWC–App, except for the reservations contained in our brief dated April 16, 1924, in the amounts therein stated, as follows:

"Calendar Year 1918.

"1. Deduction is claimed of depreciation upon patents and contract.

"2. Depletion is claimed on Bauxits Mined.

"Calendar Year 1919.

"1. Deduction is claimed of depreciation upon patents and contracts.

"2. Loss is claimed on account of liquidation of the General Electro-Chemical Company.

"Respectfully submitted,

"Aldus C. Higgins."

(8) At this time, namely, not later than May 23, 1924, the petitioner had submitted to the Bureau all the information and data which it cared to introduce or which the Bureau's representatives had requested, as bearing upon or affecting its amortization allowance, and it was the understanding of the petitioner's officers at that time that the amortization allowance made (as set forth in the Bureau's letter of April 8, 1924, see item 5 hereof) was final and complete; and the petitioner evidenced its belief that the amortization allowance thus determined was final and complete by removing from its idle amortizable equipment tags which had previously been placed upon such equipment for the purpose of identifying it as equipment acquired subsequent to April 5, 1917, and as therefore subject to amortization.

(9) Subsequent to May 23, 1924, the petitioner negotiated further with the Bureau in respect of the exceptions taken by it as described in item 6 of this statement of facts, but in such negotiations no reference whatever was made, either by the petitioner or by the representatives of the respondent, to the amortization allowance, and none of the exceptions thus considered affected or were affected by the allowance for amortization of war facilities under section 234 (a) (8) of the statute.

(10) In the autumn of 1926, approximately two and one-half years after the letters of April 8, 1924, from the Bureau, and May 23, 1924, from the petitioner the respondent transmitted to the petitioner its first intimation that the amortization settlement, as evidenced by the said 1924 letters, was to be reopened, and the Bureau based its desire to reopen that settlement and redetermine amortization expressly upon the existence of the then "present rulings of the General Counsel," and the necessity for consideration by the Bureau of "additional data," further intimating that failure on the part of the petitioner to co-operate would result in an "arbitrary disallowance of a very large portion of the previous amortization allowance." Following this letter of the Bureau, representatives of the petitioner conferred in person with the chief of the amortization section, on November 16, 1926, for the purpose of learning why the Bureau proposed to reopen the amortization matter, and were given, as the reason, that "the original computation had not been made in accordance with the present methods of the Department", and that the Bureau therefore "wanted additional information," and were further told that un-

less the petitioner furnished such additional information "an arbitrary computation would have to be made which would probably not be favorable to the Company."

(11) The petitioner did not at any time, either before or after March 3, 1924, request the Commissioner or the Bureau to re-examine the petitioner's return with respect to amortization and to redetermine its amortization allowance. The petitioner did submit, under date of December 15, 1926, a "Revised Claim for Amortization," made up on a basis then indicated by the Bureau's representatives as in conformity with their then rulings, but that document was submitted in part because of the consistent practice of the petitioner to co-operate with the Bureau and in part because of the insistence of the Bureau's representatives as described in item 10 hereof, and their intimation that, unless the material was submitted an arbitrary and unfavorable adjustment would be made.

The petitioner's representatives were under the impression that the Bureau was within its rights in demanding the submission of revised amortization data and in reopening the examination of amortization and in submitting the additional data submitted on December 15, 1926, the petitioner's representatives had no intention of waiving any of the petitioner's legal rights, and did not waive such rights. In the letter from the petitioner's representatives to the Commissioner transmitting the above described "revised claim for amortization," there was contained the following paragraph:

"The report of the amortization engineer on the original claim for amortization was made under date of January 5, 1923. This report was subsequently incorporated in the computations of the income-tax unit in its determination of the taxable net income for the calendar years 1918 and 1919. It is now nearly four years since that date, and the taxpayer had every reason to believe that a final determination of its amortization allowance had been made."

(12) Under date of November 4, 1926, the petitioner, by letter, requested the Commissioner to expedite the consideration of its income tax returns for the years 1917 to 1920, inclusive. Petitioner was advised on November 8, 1926, that a conference would be arranged at an early date, not later than November 18, 1926, due to the imminence of the expiration of the statute of limitations, and, in order to allow sufficient time for the proper consideration of the amortization

question, waivers extending the statute of limitations should be submitted. A conference was held shortly thereafter in Washington, with an engineer of the Amortization Section, as a result of which the petitioner filed its revised amortization claim of December 15, 1926.

(13) Further investigation of petitioner's claim for amortization was made by Engineer Griffith, who submitted a report thereof dated July 8, 1927. The last determination of petitioner's claim for amortization was made by respondent on December 20, 1927, when the deficiency letter upon which this petition is based was mailed.

(14) On page 3 of the report of Engineer William F. R. Griffith, dated July 8, 1927, referred to in finding of fact numbered 13, pursuant to which report of the Commissioner's last determination of amortization, contained in the deficiency letter of December 20, 1927, was made, there appears the following explanation of the occasion for the report:

Engineer Coombs made a field investigation of this claim in October, 1922, and submitted his report on January 5, 1923. In his report amortization was disallowed on a number of facilities and a number of the facilities were found to have been sold or discarded. Amortization has been allowed on the balance of the facilities practically as claimed.

Since Engineer Coombs' report was submitted, S. M. 4225 has been promulgated, which states as follows:

Both excess capacity and lowered replacement cost can be given consideration on the same facilities only in the case of individual items when the post-war cost of a similar facility of the proper size is definitely established."

The case was returned to the Engineering Division from the Consolidated Return Division in April, 1926, for reconsideration of the amortization allowance.

The question presented involves the following statutes: Revenue Act of 1918, c. 18, 40 Stat. 1057, 1077:

"Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed [as deductions]: * * *

"(8) In the case of buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired, on or after April 6, 1917, for the production of articles contributing to the prosecution of the present war, and in the case of vessels constructed or acquired on or after such date for the transportation of articles or men contributing to the prosecution of the present war, there shall be allowed a reasonable deduction for the amortization of such part of the cost of such facilities or vessels as has been borne by the taxpayer, but not again including any amount otherwise allowed under this title or previous Acts of Congress as a deduction in computing net income. At any time within three years after the termination of the present war the Commissioner may, and at the request of the taxpayer shall, reexamine the return, and if he then finds as a result of an appraisal or from other evidence that the deduction originally allowed was incorrect, the taxes imposed by this title and by Title III for the year or years affected shall be redetermined and the amount of tax due upon such redetermination, if any, shall be paid upon notice and demand by the collector, or the amount of tax overpaid, if any, shall be credited or refunded to the taxpayer in accordance with the provisions of section 252."

The Revenue Act of 1921, c. 136, 42 Stat. 227, 254, contains, for present purposes, the same provision, substituting March 3, 1924, for the phrase "within three years after the termination of the present war." Section 234 (a) (8). By section 278 (b) of the Revenue Acts of 1924 (chapter 237, 43 Stat. 300) and of 1926 (chapter 26, 44 Stat. 9) it is provided:

"Sec. 278 * * * ·(b) Any deficiency attributable to a change in a deduction tentatively allowed under paragraph (9) of subdivision (a) of section 214, or paragraph (8) of subdivision (a) of section 234, of the Revenue Act of 1918 or the Revenue Act of 1921, may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." 26 USCA § 1059.

■ These statutes make March 3, 1924, the "dead line," both for applications by the taxpayer for amortization allowances, and for the Commissioner to begin the determination of such allowances, but do not prevent the Commissioner from thereafter completing a determination begun before March 3, 1924. Counsel on both sides are agreed on this construction of the statutes.

■ The Commissioner contends that petitioner's claim for amortization was in process of audit continuously from 1921 to 1927; that the only conclusive determination there-

of was that made in 1927. The petitioner contends that there was final or conclusive determination of the amortization allowance on or before April 8, 1924, and that the Commissioner was without authority thereafter to institute a redetermination.

Exhibit 22 (a), put in the record by the Commissioner, sets forth the organization of the Bureau of Internal Revenue under Office Order No. 715, dated February 21, 1923. Under the title "Organization of the Income Tax Unit," it provides, under section 12:

"The Head of the Special Audit Division will supervise and be responsible for the operation of the following sub-division and sections: * * *

"E. The Amortization Section, which will initiate the audit of all claims under section 214 (a) (9) of the War Revenue Act of 1918, for amortization of investments in war facilities, and determine in all cases of claims for amortization the allowable deductions on this account."

The facts found (paragraph 2, supra) show that this Amortization Section made its report under date of January 5, 1923, duly signed by the engineers and by the Chief of Section. This report reduced the taxpayer's claimed allowance for amortization by nearly $300,000. The taxpayer accepted this reduction, and readjusted all its computations in accordance therewith, and applied, under date of June 15, 1923, for special relief under sections 327 and 328 of the Revenue Act of 1918. These sections (40 Stat. 1093) provide for special relief, where, owing to abnormal conditions affecting the capital and income of the taxpayer, a tax, determined without reference to these sections, would be grossly disproportionate to the taxes imposed on comparable representative corporations. As indicated in the respondent's letter of April 8, 1924, final determination of the taxpayer's net income is necessary before consideration can be given to the special relief provided under these sections. They operate only on the rate—not on the net income. The necessary implication of this letter of April 8, 1924, is that the Commissioner had finally determined the amortization allowance; that nothing remained in abeyance except the formal assent of the taxpayer to that allowance, as well as to other items involving the amount of the net income, as shown in the schedules attached to the letter. The taxpayer's reply, on May 23, 1924, accepted the Commissioner's audit, with certain reservations; but these reservations have no connection with the allowance for amortization. The facts found show that only the named reservations remained undetermined; that on their determination the audit would be ripe for considering special relief under sections 327 and 328, supra.

Owing to a change in the rulings of the general counsel of the Internal Revenue office, nearly two and a half years later, the Commissioner notified the taxpayer that the amortization allowance was to be reopened. While the taxpayer co-operated with the Commissioner, it waived no legal rights. A change in the policy of the Tax Bureau cannot affect rights already settled.

The nature of amortization proceedings grounded good reason for the special limitation contained in the legislation therefor.

The value of the extra or special equipment of a manufacturing plant with facilities for producing war supplies could only be determined after a reasonable time after the war. On the other hand, to prolong the investigation of the cost and amount of such facilities, that must be entirely or largely charged off as either useless or of greatly decreased value, would necessarily involve much confusion, divert the executives' attention from the regular administration of their business, and be, in general, an expensive and wasteful process, both for the Tax Bureau and for the taxpayer.

Significance attaches to the fact that there is no statutory provision for a waiver of this special limitation provision. The taxpayer cannot apply, even with the assent of the Commissioner, after March 3, 1924; the Commissioner may not begin a determination of an amortization allowance after March 3, 1924; only an uncompleted return, begun before March 3, 1924, may be completed thereafter.

We think that the Board's ruling in this case that, "so long as any part of the petitioner's audit was in abeyance, the entire audit was in abeyance," is plainly inconsistent with the purpose of Congress in providing for a special limitation upon amortization determinations. In effect, the ruling of the Board would nullify this special time limit; for other items of a tax audit may be indefinitely extended, beyond the four or five years' limit, by agreement between the Commissioner and the taxpayer. To tie up amortization allowances with every other item entering into a tax audit would plainly make the special limitation nugatory.

It should also be noted that, while the

statutes of 1924 and 1926, supra, expressly provided for tentative allowances, the letter of April 8, 1924, neither contained the word "tentative," nor were the surrounding facts consistent with any purpose to make such allowance tentative. On the contrary, all the proceedings in the Internal Revenue office necessarily implied that, on the taxpayer's acceptance of the substantially reduced allowance of the taxpayer's claim by the amortization section of the Tax Bureau, that part of the basis of the petitioner's ultimate tax should be regarded as finally settled. To repeat, the taxpayer accepted the Bureau's findings, and the Commissioner conclusively indicated that this matter was closed.

To sustain the ruling of the Board that the amortization remained open until December 27, 1927, over nine years after the Armistice, and over three and a half years after the "close of the war," would be to nullify the plain intent of Congress. It would require plain language to justify leaving, for this unduly prolonged period, over a million dollars' worth of manufacturing facilities subject to repeated appraisal. It is inconsistent with repeated, cited, rulings of the solicitor of the Internal Revenue Bureau.

The case of Ohio Falls, etc., Works v. Commissioner, 16 B. T. A. 1038 [affirmed June 13, 1931, 50 F.(2d) 660 (C. C. A. (6th)] is clearly contrary to the decision of the Board in the present case. If the Board was right in that case, it was wrong in this case.

We are constrained to the conclusion that the Commissioner's attempt to reopen the amortization allowance in 1926 or 1927 was ultra vires; that, under the circumstances here disclosed, the amortization allowance had been conclusively determined on or before April 8, 1924.

The order or decision of the Board of Tax Appeals is reversed, and the case is remanded to that Board for further proceedings not inconsistent with this opinion.